Case No. 14-7060 et al. United States of America, Israel, Michael L. Davis and Michael L. Davis, Appellant v. District of Columbia. Ms. Lord for the Appellant, Ms. Anderson for the Acquaintance. Good morning. Good morning. May it please the Court, my name is Sarah Lord and I am here on behalf of Michael Davis. On appeal and on cross-appeal, this case presents two separate questions. On cross-appeal, the question is whether or not the District of Columbia violated the False Claims Act when it submitted a transportation cost report that was prepared by Maximus Inc. with false certifications that the claims contained in the report were supported by and could be verified by appropriate documentation. Does that documentation exist somewhere? Did it exist somewhere? Yes, it did. It did not, however, it was not in the possession of Maximus. It was with Mr. Davis, right? That is correct. Why was it with Mr. Davis? Because Mr. Davis had prepared the interim claims during the school year. But why wasn't it back with the District of Columbia Public Schools? In that case, the chronology becomes very helpful, Your Honor. Mr. Davis was informed in the fall of 1998 that his contract would not be renewed going forward. He was not at the time informed, according to the record, that he would not be preparing the cost report for the preceding year, nor was he informed that Maximus would be preparing the cost report. Okay, so once he does the report, why doesn't he then turn the documents over to DCPS? Well, if I could complete the chronology. Sure. In May of 1999, Mr. Davis met with the District of Columbia officials, and they discussed at that time the report that was being prepared and documentation that would be required, and it was agreed that Mr. Davis would make kind of a progress report in September of 1999. One week after that meeting between Mr. Davis and the district officials, the district signed a separate contract with Maximus and for the first time contracted with Maximus to prepare the cost report. That information was not known to Mr. Davis. In June of 1999, several weeks later, Mr. Davis presented the cost report to the District of Columbia. June of 99? Yes, June 15, 1999, Your Honor. In August of 1999, there were two men. At that time, did he turn over the records? No, Your Honor. At that time, there was no request for those records. He was preparing. He had prepared the report. So when was the end of the fiscal year 98? At the end of the school year. It applied to the school year 97-98. Tell me when the end of fiscal 98 is. Well, the cost reports are based. What month? Well, the fiscal year typically would be October. So September 30th is the last month in the fiscal year? It's the last month in the fiscal year, yes, Your Honor. But it is not necessarily the last month in the school year. Well, I'm just trying to find, based on the statement that your client signed, he's acknowledged that he was the contractor for fiscal 98. That's correct, Your Honor. All right. Yes, he was. And as I was saying, in August of 1999, there were further meetings between Mr. Davis and the District of Columbia concerning the draft report that Mr. Davis had prepared. And it was at that time still Mr. Davis's understanding that his report would be the report that was provided. And in September of 1999, Mr. Davis sent a letter to the District of Columbia outlining certain items that still would be required for the completion of the report. At some point after that, and without that information being provided to Mr. Davis, the district instead submitted a cost report that was prepared by Maximus. Maximus prepared that report presumably between, well, after the contract was signed between Maximus and the district. Based on the fact. What does the record show? Well, the record does not specify when it was performed or when the work was actually done. The contract was signed in May of 1999. The contract had from Maximus an agreement that they would provide the district with the cost report in July of 1999, which is. I want to go back to your client's statement. He says that over the course of the next several years, he's talking about 1995, Davis and Associates, acting on behalf of the D.C. public schools, did five things. And the last of those is maintained appropriate original claim documentation for audit purposes. That's correct, Your Honor. So back to Judge Griffith's question. You acknowledge that the documents exist? Yes. You acknowledge that your client was under contract with the District of Columbia according to his own statement, his own sworn statement, that he was maintaining appropriate original claim documentation for audit purposes? My client understood that he was. No, no. This is a sworn statement by your client in the record. Subsequently, it was determined that that contract was not valid, that it was void of an issue. That's a different issue. That was in his breach of contract claim. Correct. This is a false claims act. Yes. That we're talking about. And I need to be clear, and I thought that's what Judge Griffith was asking. According to your client's own statement, the documentation existed for audit purposes. It did exist, Your Honor. At no time during the time. And at the time he was maintaining it, he was acting on behalf of the D.C. public schools. He was no longer acting on behalf of the D.C. public schools when the Maximus Cost Report was prepared. I understand that, but this is his sworn statement that was filed April 4, 2006. The false claims act is based on the time in 2000 when the Maximus Cost Report was submitted. I understand, counsel. But you're stuck with your counsel's sworn statement. That's all I'm trying to understand. If he has the documentation and he's acting on behalf of the D.C. public schools, and you answered the question that Judge Griffith asked you, does the documentation exist? And at that time, he has it. And he has it because he's under this obligation. And he's just refusing, according to his own statement, to turn it over until he is paid for work done. That refusal was subsequent to the submission of the cost report. But this is his sworn statement. I'm trying to understand what kind of case this really is. The false claims act was violated through the submission of the 2000 Maximus Prepared Cost Report. Okay, so your theory is not that when the claims were made for reimbursement, that somehow the transportation had not taken the students to medical centers. That's not your claim, right? No, Your Honor. Your claim is that when that was submitted, that the district itself was not in possession of documentation that showed that the kids were taken to medical care, right? Your claim is not, as I understand it, that there was no documentation supporting that reimbursement claim. It's just that the district didn't have it, right? That is correct. The district didn't have it, but Davis had it. And why didn't the district have it? That was my original question. Just tell me. I got the chronology, and that was an excellent job. Why didn't the district have those documents? Because the preparer of the cost report had the documents, or should have. Why didn't he give them to the district? Because during the time period that the cost report was being prepared by Maximus, the district did not request the documents from him, and he believed that he was preparing the cost report for the district. So you think it's legally significant, for terms of the False Claims Act, that the documentation existed, it supported the claim for reimbursement, but the district didn't have it, but someone else had it, the district was in a spat with that someone else over those documents, and all that makes a legally significant difference under the False Claims Act? I just want to emphasize one thing. There was no spat over the possession of the documents, and no request for the documents. So the district never asked for the documents? Until, as far as we can tell from the record, until approximately February 2002. What is the legalese? Why is it legally significant that the district didn't possess the documents, but they existed, and Mr. Davis had them? They knew what they were, right? The regulation that you're asking us to turn into a basis for a False Claims Act claim says that they've got to be available for audit purposes, right? If an auditor had showed up then to the district and said, give us your documentation, would the auditor have been able to find them? They would have gone down to Mr. Davis' office and found it. I'm having trouble seeing how this is anywhere near the homeland of a False Claims Act. That's what I'm struggling with. The False Claims Act is based on the fact that the report that was prepared and submitted reflected claims and a method of calculation for those claims that was not based on the documentation that would verify those claims. Let me give you an example, counsel. Let me just interrupt, because your client took the position that the district had to have in its physical possession encounter forms and progress notes. So here's my hypothetical. I give my accountant my canceled checks to prepare a financial report. There's a fire in his office. The checks are destroyed. But I have my monthly statements from the bank listing those checks and to whom they were paid. Now, why couldn't the district be in a similar situation? It may not have the encounter forms, but it has other documentation that it reasonably believes is sufficient to support a claim. I just want to be clear about that. For the claims to be valid, it was necessary to demonstrate that on that given day, that student received the medical services that qualified the student for the transportation services. So I paid the check, and this monthly document shows it. But if the district did not have in its possession a document comparable to the document that you are describing, Your Honor. If. If the district were able to demonstrate that on X days these students received these services, these medical services, and partook of the transportation services that were qualified by those medical services, that could be an alternative method of proof. But let me ask you, your client had made in fiscal 96 these documents available for audit, and he was under contract with the district for fiscal 98. Why would it have been grossly unreasonable for the district to assume he would make them available for the fiscal 98 year as well? After all, he only had the documents because of the contract. They were public school documents, not his documents. That is correct. But the district allowed a cost report to be prepared without reference to those service encounter forms. So that's what this case is about. I just need to be clear. And that is half of the aspect. The second aspect is the certification that attached to each of those claims, which was that the district, as evidenced in that cost report, could back up the claims that were referred to in the cost report through the documentation. I mean, this is the other thing. We don't know, Your Honor. But let me just be clear. You are not arguing, and it's out of this case, that the services were received and that there is no prejudice or loss to the United States, that the district never received from the United States more in reimbursement than it was entitled to. Those two issues are out of the case. So the only thing left in the case is, did the district violate the False Claims Act because you're arguing it didn't have physical possession of the encounter forms and the progress notes? It is not, in part, yes. But it is not clear that the claims that are reflected in the cost reports would have been claims that would have been made or were made in the cost report that Mr. Davis prepared based on those encounter forms. And why did they have to be identical? Because the service encounter forms define the eligibility for the transportation. No, but I mean my hypothetical with my checks. Well, the information did not otherwise exist. How do you know? The district says. The progress notes. How did they get it so right? What? How did they get it so right, then? Yes. Well, they didn't get it right. As to transportation, that's all that's at issue here. Right. But they didn't get it right as to either one, and they're interrelated. Because subsequently, the district had to repay MAA, which then repaid CMS, based on the submission of the cost reports. And the defect in the cost reports was the absence of the supporting documentation. The regulations call for, as I understand it, regular periodic audit and true audit. Correct, yes. And that's not specific to this jurisdiction or this year or anything like that. It's in the regs. So it's contemplated there will be errors. There may be errors in the submissions. The audit will turn those up, and then whoever is short will pay the other party at the end of it for the true audit. Right? Right. So does every error mean that there's a false claim? No, and we're not saying that here. But in order to conduct the audit that you spoke of, the documentation and the record for those claims must be available so that the claims can be verified. Well, available, not necessarily in the possession of the submitter. Well, it goes back to the issue of whether or not, because the real focal point in this case is the act of submitting the transportation cost report. And at that moment in time, Maximus did not have supporting documentation for the claims that it was making. And did not have evidence. I take your point. You're reading the relevant regulation as a condition of payment rather than a condition of participation in the program. Yes. We're saying that it is an implied or it is a condition of payment, and it's material to the decision to pay on the claim. And specifically which reg says that? There's no ‑‑ it's not expressly stated. It implies that. It implies it, yes. Which one? The regulation, I'm sorry, I can't immediately cite the numbers. Is it the one that says providers must provide adequate cost data? Yes, but also in the second one, which itemizes the types of documents that are required. In that regulation, the court, I'm sorry, the regulation specifies a range of documents and also indicates that it's not limited to those specific documents. And by analyzing the regulation in terms of the purpose that the regulation serves, in the context of this case, the service and counter forms are critical to the determination of whether to pay. There are any number of costs that get factored into a transportation cost. And some of those costs are costs like fuel costs, salaries, et cetera, maintenance for the buses and so on. But a key multiplier is the number of days that the students received the services for which they were transportation eligible. And that's what the service and counter forms document. If a student didn't receive the service on that day, then they didn't get the transportation service. And therefore, that claim would or should be backed out of the cost report when the settlement is finally adjusted. And because Maximus did not have those service and counter forms, there was no way that they could verify that the number of claims that they were claiming for transportation costs was in fact accurate. And yet, they submitted that cost report to the district or on behalf of the district for a reimbursement. I'm just looking at the reg. Is it the one that says adequate cost information must be obtained? Yes. Okay, let's look at it. It must be obtained from the providers represented by DCPS to support payments for services furnished to beneficiaries. The requirement of adequacy of data implies that the data be accurate and in sufficient detail. That's basically it, right? Adequate cost information must be obtained. It's a passive voice. It must be obtained from whom? By whom? It doesn't say it must be maintained by the provider. It says obtained from the provider's records, presumably by someone else. Presumably by the preparer of the cost report. Well, I don't know. It's not entirely clear. It could be by MAA in this instance, couldn't it? I'm sorry. I'm not quite sure I'm following you. Are you saying that MAA could in turn request the documents from, say, the district? Yeah. I'm not quite sure. Yes. I assume under the regulations that that is possible. Well, since it's in the passive voice, it's not entirely clear on its face. Right. And yet you want us to infer from that that the maintenance, the possession of these records by the provider at the time of submission is a condition of payment. It just says that the information must be obtained from the provider's records. Well, the provider is also required to maintain the records under the district's Medicaid plan, and so the maintenance... Well, when it sends them out to its accounting firm, as it did each year, and when there's no difficulty and the records ultimately come back, it has not, I mean, it's not required to maintain them there, right? It was okay to send them out to the accountant. Correct. But again, we keep coming back to the fact that the cost report that was submitted was not based upon the service encounter forms, and the certification that these claims contained in the cost report could be verified was not a certification that Maximus could make. But could I just ask, your client submitted his report... To the district. That's right. Yes. And he claimed he had the backup data for that. Correct. Although he also, in correspondence, indicated that there was additional information that would help to support the claim. But his sworn statement is he has the backup documentation. Yes. And he told the district, when the district asked them how did they get the records, he said, I want to be paid for my work. He said it twice. Yes. So he claims he hasn't been paid, but he clearly understands that he was under contract with the district, and he has the very documents that you're claiming the regulations require the district to have. So to the extent that the district was required to maintain the documents, they have been maintained. They are, again, the refusal to turn the documents over came subsequent by several years. So did the audit.  To the audit. It came after the audit as well. So he loses his breach of contract claim, and he files this false claims act claim. All right. And so we're trying to parse the language to show that there was a knowing violation. And I think you're stuck with your client's sworn statement, that he had the records. He simply wanted to be paid. He had them. He told the district he had them. But this discussion did not take place when that cost report was submitted. I'm talking about the sworn document your client filed in filing this case. Yes, Your Honor. But the dialogue that's described in that statement was subsequent by several years. It doesn't matter. My point is he acknowledges he has the documents, and all he has, the district has to do is pay him for his work. It's not that he's claiming that there are no encounter forms. He has them. But then we come back to the fact that the claims that were in the cost report that was submitted by Maximus may or may not be claims that relate to his service documentation. But we're talking about a false claims act that they knowingly submitted. And your client has a burden here. You say they may or may not. Has your client met his burden? Well, part of the problem is that the cost reports have never been discovered. Why not? Well, I don't know the answer to that. No, no, you do. Did you ask for them? Yes, repeatedly. And why weren't they turned over? The district was unable to locate them. Which cost reports? Both the medical services cost report and the transportation cost report. And so what did the district turn over in discovery? What ultimately was received as the cost reports were redacted cost reports from Burt Smith, who was the auditor. The independent auditor. Independent auditor. And so it is not the full and complete cost report. So it's not complete because it's redacted? It's redacted by about I think somewhere in 50 to 70 pages are missing. The district has represented. Because they're redacted or it goes from page 1 to page 52? They're redacted. Out of how many pages? I believe it's in the appendix. Is this the list of 82,000? I believe that the cost report itself is supposed to be about 130 pages and they're approximate. A big chunk is missing. So let me ask you a simple question. What should the district have done under these circumstances? The documentation that supports the claims or would have supported some claims is not in their possession. There's a dispute going on. They don't want to pay your client. Your client doesn't want to give them the documents while there's disputes going on. So what should the district have done? Well, again, the dispute was not ongoing at the time that Maximus prepared the report. The cost report, that is not available. And in addition to seeking it in discovery from the district, my client also requested it from Maximus. And Maximus indicated that they, too, were unable to produce the complete cost reports. So the actual cost reports that Maximus submitted for the district have not been made available. But it had your client's cost report for 98. The district had that in their possession because he had provided it to them. But that's not the cost report that the district submitted. But the cost report is for fiscal 98 that your client submitted to the district under his contract, correct? Correct. So the district had that. Yes, but that's what they had. And the actual cost reports that Maximus prepared appear to have or do not appear to exist. So that's the answer. They should have submitted the cost report that you prepared for them? No. Well, sorry. There wasn't any particular reason not to continue the process that Mr. Davis believed or understood he was engaged in in 1999, which was the preparation and the submission of the cost reports, including, you know, the service encounter forms and other documents. Do we have discovery on that? On which point? We know that your client was charging a lot more than Maximus, all right? So that's one reason in the record that the district decided it was going to get somebody else for 99. But there's some other issues lurking here in the record as well. Do we have a full record on what the district's concern with your client was? I do not. I haven't seen it. Seen it. Based on my review, I have not seen it. All right. But they were honoring the contract with your client through fiscal 98, because as you keep telling me, these disputes arose later. And your client was maintaining appropriate original claim documentation for audit purposes? Yes. And so is your answer to Judge Ginsburg that the only choice the district had was to submit your client's cost report? I wouldn't characterize the only choice that they had. Well, what else did they have, in your view, to avoid a false claims act suit? I think the answer lies to some degree in what the Maximus cost report encompassed. In other words, the district did not or Maximus did not. The Maximus report could have been adequate without using the documentation that Mr. Davis retained. I'm sorry. I missed the first part of the question. So are you suggesting that the Maximus report could have been adequate, could have avoided a false claims act, by using some documentation other than the documentation that Mr. Davis retained? No. I'm sorry. That isn't what I meant to imply. What I implied was that if there had been some degree of communications between the parties over the ‑‑ and we're speaking highly speculatively here, but if Mr. Davis had been requested to provide information that Maximus knew or should have known was required. And that didn't take place. Your narrative is that the district discharges Mr. Davis, gets a new accountant who goes ahead and prepares a report with inadequate documentation and apparently insufficient effort made to get from Mr. Davis the adequate documentation. Is that the story that we're ‑‑ That is, I believe, what happened. So your client meets his burden of proof, the summary judgment, by saying he has the records? He establishes that Maximus and the district did not have the appropriate documentation for the claims. He did. Because he knows that, because he did. Correct. And he knows that that information was not reflected. And they never asked him for it. They never asked him for it. They just, in your account, they just pressed ahead, and that was unlawful. They pressed ahead and came up with a report seeking reimbursement without adequate representation, and that is a violation of the false complaint. The chronology is particularly interesting, because Mr. Davis met with the district to discuss the report on, I believe, May 18th, 1999. And six days later, I think on May 24th, the district signed a contract with Maximus under which Maximus would prepare that same cost report. But the district had your client's cost report. Not until June. He didn't turn it over until June? June 15th, he submitted it. And so what did he submit in June, precisely? He submitted his initial draft of the cost report. And did he represent that he had the backup material for that report? I do not recall whether he says that specifically in that letter or not. Well, did he or didn't he? I don't recall. Well, his sworn statement. His sworn statement. Did he have the documentation? I'm sorry, I thought you meant did he say it in the letter. Yes, he had the documentation. I'm sorry. The district had a report from your client in which your client has said he has the backup documentation. He has these encounter forms. Correct. His progress notes. Correct. So the district can take that, Maximus can use that, and move forward. I just want to find out what you think the district's options were. I think the district's obligation was. Options. I think that they. We're in False Claims Act territory now. I think that they needed to have the appropriate documentation, the service documentation. Physically in their possession. Yeah, within their control or their custody. Well, your client had previously made these documents available to the auditor. That's correct. But they were never requested. Wouldn't your argument be more consistent with the factual, your factual version of events, if you said not only did the district need to have them in their possession, but they actually had to use them. Yeah. Right? Isn't that your argument? Your argument is that Maximus didn't use them. Yes. Maximus's claims were not supported by the documentation. And how do we know that? Because they did not have the documentation, the service documentation. But they had your client's report that said he had the documentation. That report was a statement of the claims based on that documentation. I think that becomes a sort of legal. We're at summary judgment. That's what I can't understand. But it's claimable. You may prevail, ultimately, but it's summary judgment based on this one statement? It's sort of a leapfrog argument to say that Mr. Davis's physical possession of the documents and submission of a report that was based on those documents permits a subsequent report writer to say that the claims in his or her report are valid and capable of being verified through documentation that is in that company's possession. Or available. Or available. And all they have to do is pay your client for the work he's done. Okay. Let's hear from the district, and we'll give you some time and rebuttal. May I please support Stacey Anderson on behalf of the district? Your Honors, I'd like to begin, first of all, with clarifying what's in the record regarding the Maximus Transportation Cost Report. That cost report is in the record. It begins at page 373 of the Joint Appendix. What has been redacted from the record is a roster of approximately 2,700 Medicaid-eligible students, and that redaction was made pursuant to protective order from the court, and that's reflected at page 389 of the Joint Appendix. What documentation did Maximus have when it put its report together? What did it rely on? Sure. It relied on two, I guess, distinct classes of documentation. The first thing it had was the paid claims history of Mr. Davis's interim request for reimbursement. It had a list of those reimbursement requests, totaling 82,615. We know that those requests were supported by adequate documentation, that the services were provided, and that they were provided to Medicaid-eligible students, because Mr. Davis has conceded that his interim requests for relief are adequately supported by the record. So we have the roster of paid claims. Did Maximus have that when they put it together? Yes, Your Honor. I would cite page 377 of the appendix as well as docket 107 and 107-1 for that, to support that proposition. So they had that. I think it's actually reflected in the report. The second thing that they had was the cost information. This is a cost report. The district, as a clinical provider, is entitled to reimbursement at a rate of 100% of its actual costs of providing the transportation services. So at the end of the year, what they do is they produce this report that shows what those costs were. Those costs include things such as a cable. But the key is to show that those costs were transportation was undertaken to get the students to medical care, right? Correct. And what documentation did Maximus have of that? Again, we had the paid claims history report. I see. So we get the service information from Mr. Davis's claims that he sought on an interim basis. And how far off was Maximus? A lot. A lot, okay. When Bert Smith did the audit, they actually found that the district was entitled to reimbursement for over $199,000. So we underreported is what we did essentially. So it took the interim reports, the $82,000 claims. Yes. And it matched them to the cost report, which I saw in the record like a driver worked on a certain day. Correct. And then it did some multiplying? Yes, Your Honor. And, again, because the district's entitled to reimbursement at 100%, it doesn't matter how many actual transportation services we provided. We are just required to report, again, the total cost. And that's what the cost report reflects. What else did you have? Did you want to just tell us? We had the roster of Medicaid-eligible students as well, which is something that Mr. Davis indicated he actually lacked when he prepared his cost report. I think those are the three kind of categories of information that Maximus had. And it's the district's position that's all it needed to prepare that cost report. And, again, to the extent it needed more information, additional information looks like it would have entitled the district to additional reimbursement. So let me just be clear. With these interim submissions, the district just says in the first quarter. I'm just trying to get the distinction in my mind between the documentation that is submitted as opposed to the interim claims that are submitted. Right. With the interim claims, it's my understanding, and, again, it's not reflected in the record, but my general understanding is we do it on a monthly basis. Mr. Davis did it on a monthly basis. In general, the information that's conveyed is the name of the student, their Medicaid number, the service that was provided, the provider name, and the date on which the service was provided. So Mr. Davis compiles that information and submits it from records that have been provided to him by the district. So when there's all this testimony about encounter reports and progress notes, are they forwarded with the interim so far as the record indicates? Mr. Davis' claim is that they are. It's the district's position that we did not provide him with those documents, that we retain possession of them. We base that on several pieces of evidence in the record. Mr. Davis' contemporaneous 1999 letter in which he was reminding the district that, in fact, we were required to keep possession of the progress student notes in the individual student's files. We have testimony from the auditors that they, in fact, reviewed those individual student files, and I noted in our reply brief as well that the district did challenge Burt Smith's audit on appeal and reported in that appeal that their review of the student-specific records indicated we had at least 90 percent of the progress notes and encounter forms necessary to support our Medicaid claims. So was all this in the record before the district court? Yes, Your Honor, it was. And so the discovery, it's over 700 pages. That was of cost information that the district provided, again, going to the fuel and the payroll and the salary. So we did clearly have that still in our possession. We were able to produce that during discovery. And what was redacted was simply pursuant to the protective order? Yeah, pursuant to protective order. It was the roster of Medicaid-eligible students, identifying information related to them. Again, that's reflected on page 389 of the joint appendix. So what is your understanding of what Mr. Davis claims he has when he says he maintained appropriate original claim documentation for audit purposes? I'm not sure what Mr. Davis has. All right. So he's never identified what it is he has? No, Your Honor. I take it from his complaint and his personal statement that he is claiming that he has provider records. For example, your therapist who takes progress notes during your therapy session, he would have all of those documents, all originals and all copies. Again, his claim is predicated upon the notion that the district had no records to support the individualized. Well, he started that way, but then the district said, no, we have some records. And as I understand it, he said, but you don't have the critical records you needed. Correct. Well, yes. Those are my words, not his words. Right. He's now limited his claim to we lack the service-specific documentation necessary. The encounter forms and the progress notes. Right. That's what he's claiming. Yes. Again, and to make that clear, practically speaking, we're talking about medical records. We're talking about individual education plans related to the students, things that would normally be maintained by the medical provider or the school district as part of the student's educational file. So it is the district's position that Mr. Davis's claim does fail, both in the fact that the district did not make a false implied certification that it retained physical possession. Even if such physical possession was required in this case, I think the record is clear that it's not an express requirement. The regulations don't reference service material, nor do they make physical possession a condition of payment. Well, let's imagine the district presented a claim for reimbursement to Medicaid and said, now, here's our claim, but you know what? We don't have any documentation supporting this. I would agree, Your Honor. Is it imaginable that Medicaid would say, oh, here's your certificate? Absolutely. Okay. The point I want to make here is it's not that the documentation doesn't have to exist. I think the district is in agreement that for Medicaid reimbursement purposes, you do have to have the documentation. The issue here is that the district has to have physical possession of that documentation. Right, but that's a different question, yeah. So that's our point here, and that's Mr. Davis's claim. It's not that the district certified that would be able to produce the documentation. It's that we falsely certify. under SAIC is limited only to contractual terms, is it? I think, yes, I mean, I am, Your Honor. I think the court left that question open in SAIC, and I think other jurisdictions who have considered the issue in the context. But that's why I gave you the hypothetical. If you came to Medicaid with this claim, with this reimbursement claim, and said, you know, there's nothing in our contract that says we have to keep records. There are these regulations that say we need to keep records for audit, but we haven't done that. It's hard to imagine that Medicaid would say that's not a condition of payment, is it? And I apologize, Your Honor. I assumed your hypothetical was that we had never had them at all. I think if we had never had them at all, I think it would be a condition of payment. I see. I see. But the fact that we did have them, the question simply is whether or not possession. It would be a condition of payment, but you would satisfy the condition. Correct. Right. Can I say? Yes, Your Honor. Okay. Thank you. So are we two ships passing in the night here, just so I can be clear on these records? Mr. Davis says he has the critical records. Maximus could not have had those records when it submitted the report, and therefore there was a false claim. D.C. says we had the records we needed, and there certainly was no knowing submission of a false claim. That's correct, Your Honor. I think that is an accurate statement of both parties' positions. I think I would point to the record evidence that would support the district on the notion that we did, in fact, have the records. Again, there was a two-year audit conducted by Burtsmith. At the end of the day, Burtsmith concluded, based on its review of the records, that the district was entitled to more than twice the federal financial participation it sought. I know, but the claim is prior to that. In other words, when you submitted the report, did you have adequate records? I believe, Your Honor, I don't think that our – what we had didn't change over time. Mr. Davis's claim is he had them all. The district's claim is we possessed whatever we needed at the time we filed our reports and at the time of audit. At this point, you know. So the district did not need to have whatever it is Mr. Davis says he has. I think the record supports that the district did not need it because we either had it or it was not material to CMS's payment decision.  But you need to have these encounter forms and you need to have progress notes. Isn't that an indication that you did need those types of records? Generally speaking, yes. During the audit, they do review for those records. Again, I'm not talking about whether they exist. It's whether we had possession of them. And again, I think the record would support, you know, in the first point of the analysis, whether or not the district falsely asserted possession. I think the evidence supports the district's view here today that we did, in fact, have possession of the necessary records during the audit process, looking at the testimony of the auditors, looking at the outcome of the audit, looking at the problems that were identified. Much of the issue with service documentation related to the medical service side, which the district court found to be barred by the statute of limitations. It's not an issue here. And so when you look at CMS's review, their focus is on that in terms of service documentation, not on the transportation cost report. So based on the record, the district views we have possession. If we didn't have possession, it wasn't material and it wasn't a knowing lack of possession given the way the facts unfolded in this case. If the court would like to discuss the second issue regarding the number of claims that might be at issue here, I'm happy to discuss that. If not, we'd ask simply that the court reverse and enter judgment or direct judgment favor of the district. Thank you. Counsel for Appellant. Can I interrupt? Yes. So correct me if I'm wrong. Have you made the argument before that the failure with the maximum support is that they didn't actually rely on the proper documentation? Have you made that argument before? In the lower court, we were not representing Mr. Davis, so I can't answer that directly. Yeah. But you know what the record said. Having reviewed the record, there appear to have been a series of moving targets. Yeah, I don't think you've made it before. I don't believe it has been made explicitly. Yeah. With respect to that sort of factual question of who had what and who did not have what, the district's records related to the costs for the transportation. Mr. Davis possessed records that identified the students, their Medicaid ID number, what kind of services they received. But you're telling us this. He has yet to tell us this. On the record, that is correct. Yes. We don't know what he has. That is correct. But he has represented that he has the service encounter documentation. Where has he represented that in the record? All he said is that he's... In his filings and submissions. Right. The district's reliance on the testimony of the witnesses does not support that the district had the service encounter forms. Either the witnesses were testifying to how the process should be conducted or they were not even directly involved with the process and did not have information about what was reviewed. And with respect to that... And so that's your argument. If they didn't have the service encounter forms, they could not submit a reimbursement request without violating the False Claims Act. That is correct. But that verifies... It's a critical multiplier. It's my cancel check hypothetical. It's the critical multiplier. Okay. You don't have the cancel checks, but you have a monthly statement from the bank. But your monthly... The cancel checks are the best evidence. But you do have some other evidence. But your monthly statement is deficient in certain respects. What? Depending on what kind of bank you're talking about. But the auditor can call the bank and get the back-up information if he needs it. But there's no evidence that the documentation... that there were multiple copies and alternative custodians for that record. The district said they had some. I mean, that's the thing about this case. That's so mind-boggling to me. I mean, we don't know what your client has. We're not totally clear what the district had. And yet we're on summary judgment. That's the amazing thing to me. Anything further? Solely that the Bert Smith audit was based on agreed-upon procedures because of the lack of documentation. And then just as a final factual matter, the point that was made about the number of claims being 199,000 claims and that the Maximus report was for less, I do think it's worth pointing out that, in fact, Mr. Davis's cost report encompassed approximately 199,000 claims as well. There was a 900-claim difference. And so the report that is being held up for the court is similar in many respects to the report that the district rejected from Mr. Davis, at least in the number of claims. So they should have retained him. Is that your argument? But that doesn't have anything to do with the False Claims Act. This is what we're talking about now. No, but I'm talking about the cost report that he prepared and that was not used. But that goes against your argument. Pardon me? That goes against your argument. That's the question I asked earlier. They had your client's cost report. They had his cost report. Yeah. He submitted his cost report in June. Okay. Thank you. Thank you. We'll take the case under advisement.
judges: Rogers, Griffith, Ginsburg